In re Walter J. **ALDRICH**, Debtor.

**Barbara R. Loevy, Chapter 7 Trustee of the estate of the above-named debtor, Plaintiff,**

v.

**Mary A. Aldrich, Defendant.**

**Bankruptcy No. 99–20333–K.**
**Adversary No. 99–1040.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

June 21, 2000.

Steven N. Douglass, Memphis, TN, for Plaintiff–Trustee.

Michael Don Harrell, Memphis, TN for Mrs Aldrich, defendant.

Ellen B. Vergos, United States Trustee, Memphis, TN for Region 8.

## ORDER AND MEMORANDUM RE PARTIES' MOTION FOR JUDGMENT ON THE PLEADINGS COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

The parties' deemed motion for a judgment on the pleadings[1] arises out of the above-captioned adversary proceeding filed by the plaintiff, Barbara R. Loevy, chapter 7 trustee of the estate of the above-named debtor, Walter J. Aldrich ("Mr.Aldrich"), against the defendant, Mary A. Aldrich, the non-filing spouse of Mr. Aldrich ("Mrs.Aldrich"). Plaintiff-trustee seeks a judicial determination that she, in her capacity as the statutory representative of this bankruptcy estate, is entitled to *all* of the proceeds of a $14,044 joint tax refund check payable to both Mr. and Mrs. Aldrich.

By virtue of 28 U.S.C. § 157(b)(2)(A) and (E), this is core proceeding. The sole and ultimate question for the court to determine is what portion of the joint tax refund check, under a totality of circumstances, should be allocated to the bank-

---

1. See FED. R. BANKR. P. 7012(b), which adopts FED. R. CIV. P. 12(c), styled "Motion for Judgment on the Pleadings." The parties agreed to treat the plaintiff-trustee's motion for a summary judgment as a motion for a judgment on the pleadings.

ruptcy estate of the debtor—Mr. Aldrich and what portion, if any, should be allocated to Mrs. Aldrich, a non-filing spouse-homemaker. This issue is one of first impression for this court.

Based on the pleadings, undisputed background facts, the case record as a whole, and statements of counsel, the following shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

As noted, the ultimate question presented for judicial determination here is whether Mrs. Aldrich, the non-filing spouse-homemaker, who at times relevant here made substantial contributions to the martial enterprise between her and Mr. Aldrich, is entitled to a portion of the couple's joint federal income tax refund. For the reasons mentioned below, this court finds and concludes under a totality of the partial facts and circumstances that Mrs. Aldrich is entitled to one-half of the joint income tax refund proceeds.

Although the parties have a strong difference of opinion regarding the outcome of this proceeding, the relevant background facts are not in dispute and may be briefly summarized as follows: Mr. and Mrs. Aldrich are husband and wife. Mr. Aldrich works outside the home as a food services manager and generates all of the taxable income for the family unit. Although at times relevant to this proceeding Mrs. Aldrich did not generate taxable income, she was a homemaker and made substantial, yet economically uncompensated, contributions to the marital unit. In 1998, Mr. and Mrs. Aldrich filed a joint federal income tax return. On January 11, 1999, Mr. Aldrich filed a voluntary chapter 7 bankruptcy case under section 301 of the Bankruptcy Code ("Code"). Mrs. Aldrich has not sought relief under the Code.

On May 28, 1999, after the filing of Mr. Aldrich's chapter 7 case, the United States Treasury ("Treasury") issued a joint tax refund check payable to both Mr. and Mrs. Aldrich for $14,044. The Treasury issued the refund check in order to compensate for a substantial overpayment. On December 8, 1999, the plaintiff-bankruptcy trustee filed this adversary proceeding, which is styled "Complaint to Determine Validity, Extent, and Priority of Interest in I.R.S. Refund." Plaintiff-bankruptcy trustee primarily asserts, pursuant to Fed. R. Bankr. P. 7001(2),(7), and (9), the following:

- the joint tax refund check is solely the property of Mr. Aldrich's bankruptcy estate because the refund exists only because of the income earned by Mr. Aldrich;

- that the bankruptcy trustee is entitled to a determination by this court that the tax refund check is not held as tenancy by the entirety so as to leave Mr. Aldrich with only a survivorship interest in the refund and constitutes property of the estate;

- that the bankruptcy trustee is entitled to declaratory relief; and

- that the bankruptcy trustee is entitled to affirmative injunctive relief through this Court ordering Mrs. Aldrich to endorse the joint tax refund check issued by the Internal Revenue Service or in the alternative order the Internal Revenue Service to issue a replacement check solely in the name of the Debtor—Walter J. Aldrich.

Subsequently, the defendant—Mrs. Aldrich filed an answer to the plaintiff-trustee's complaint. Mrs. Aldrich has a different theory on the outcome of this litigation. She asserts that the plaintiff-trustee's complaint should be dismissed and that all the joint tax refund proceeds should be turned over to her.

On March 30, 2000, the parties agreed that Mrs. Aldrich could endorse the joint tax refund check in the amount of $14.044.00, dated May 28, 1999, for deposit into a joint escrow account subject to joint signatures of Mrs. Aldrich's counsel and the plaintiff-trustee. All competing claims to the tax refund check have attached to the proceeds now held in the plaintiff-

trustee's bank account. Plaintiff-trustee shall make no distributions of these funds pending further order of this court. On April 18, 2000, the plaintiff-trustee filed the instant motion for summary judgment. The parties have agreed to treat the summary judgment motion as being a motion for a judgment on the pleadings.

■ Upon the filing of Mr. Aldrich's chapter 7 case, a bankruptcy estate was created by operation of law under 11 U.S.C. § 541(a). The bankruptcy estate under section 541(a) is broad. *See*, for example, *Johnston v. Hazlett*, 209 F.3d 611, 613 (6th Cir.2000). It consists of all Mr. Aldrich's legal and equitable interests in real or personal property, wherever located and by whomever held. *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

■ By virtue of *Butner v. U.S.*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the bankruptcy court ordinarily is obliged to apply state law with respect to a determination of substantive property rights other than those where federal statutes, treaties, and the Constitution are involved. *In re Thorsell*, 229 B.R. 593, 597 (Bankr.W.D.N.Y.1999). Indeed, in numerous respects the Code presumes reliance upon state standards especially with respect to determinations of liability and the delineation of property interests. *Id.* at 597.

■ Under Tennessee law, it is legally permissible for a husband and wife to own either real or personal property in any manner they choose. *Griffin v. Prince*, 632 S.W.2d 532, 535 (Tenn.1982). For example, a couple may own real or personal property as tenants in common, individually, in partnership, as life tenants, joint tenancy, or any other manner. *Id.* at 535. Furthermore, Tennessee courts of equity, like bankruptcy courts, have long wielded the power and authority to render decrees in appropriate cases based upon equitable principles in the light of all the particular facts and circumstances involved. *See Preston v. Smith*, 41 Tenn. App. 222, 293 S.W.2d 51, 61 (1956); *see also Bank of Marin v. England*, 385 U.S. 99, 103, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974).

By virtue of 11 U.S.C. § 323(a), the plaintiff-bankruptcy trustee is the statutory representative of the section 541(a) estate which was created upon the filing of Mr. Aldrich's chapter 7 case. Plaintiff-bankruptcy trustee's statutory duties are codified in 11 U.S.C. § 704. Pursuant to the statutory duties enumerated in section 704, the plaintiff-trustee filed this action and now cites and heavily relies upon *In re Larish*, 149 B.R. 117 (Bankr.M.D.Tenn. 1993). In *Larish*, the bankruptcy court held that the joint income tax refund was the sole property of the bankruptcy estate where only the income producing spouse sought relief under the Code. With a keen focus on the creation and extent of property interests and source of the income tax refund, the *Larish* court stated as follows:

Any interest of the wife in the tax refund must be attributable to her income. *See In re Baker*, 82 B.R. 461, 463 (Bankr.S.D.Ohio1987); *Rosen v. United States*, 397 F.Supp. 342, 343 (E.D.Pa. 1975). This refund arose solely from withholdings from Mr. Larish's income in excess of tax liability. The refund is not held as tenants by the entirety, it is property of the estate and it is recoverable by the trustee for the benefit of creditors.  .

*In re Larish*, 149 B.R. at 119.

Simply stated, the plaintiff-trustee in the instant action asserts that as a matter of law this estate is solely entitled to the full joint tax return for the benefit of the creditors of Mr. Aldrich. However, this court recognizes and appreciates that other courts have resolved this issue differently. In *In re Lyall*, 191 B.R. 78, 84 (E.D.Va.1996), the court summarized the three distinct approaches to this issue. First, the *Lyall* court recognized that "a majority of courts have held that a tax

refund arising from a joint tax return should be allocated proportionally according to the tax withholdings during the relevant year." *Lyall*, 191 B.R. at 85; *In re McFarland* 170 B.R. 613, 620 (Bankr. S.D.Ohio 1994); *In re Honomichl*, 82 B.R. 92, 94 (Bankr.S.D.Iowa 1987); *In re Alden*, 73 B.R. 215, 216 (Bankr.N.D.Fla.1986); *In re Ballou*, 12 B.R. 611, 612 (Bankr.D.Kan. 1981). Another approach is for a court to allocate joint tax refunds proportionally, in accordance the with income produced. *Lyall*, 191 B.R. at 85; *see In re Levine*, 50 B.R. 587 (Bankr.S.D.Fla.1985); *In re Verill*, 17 B.R. 652, 655 (Bankr.D.Md.1982); *In re Kestner*, 9 B.R. 334, 336 (Bankr. E.D.Va.1981); *In re Colbert*, 5 B.R. 646, 648–49 (Bankr.S.D.Ohio 1980). Finally, the *Lyall* court noted that one court held that joint tax refunds should be allocated equally between husband and wife without regard to tax withholdings or income produced. *See Bass v. Hall*, 79 B.R. 653, 656 (W.D.Va.1987).

In *Bass v. Hall*, 79 B.R. 653 (W.D.Va. 1987), United States District Judge Kiser held under Virginia law and the debtor's exact circumstances that the debtor's non-filing wife was entitled to except one-half of the tax refund even though her income did not equal 50% of the income reported on the joint tax return. *Id.* at 656. Judge Kiser stated, in relevant part, as follows:

Had Mr. and Mrs. Hall filed for divorce instead of bankruptcy, their proportional contribution to the income on which the return was based, if considered at all, would only be one factor weighed by the court in distributing the refund. Recognizing that one spouse frequently performs valuable but economically uncompensated services for the family, the equitable distribution statute explicitly directs courts to consider both monetary and non-monetary contributions to the acquisition of assets. [emphasis added, citations omitted]. It would, therefore, be incongruous to consider financial contributions to the taxable income which generated the refund in this case.

By analogy, under Tennessee divorce law, it is noted that Tenn.Code Ann. § 36–4–121(a)(1)–(2) and (b)(1)(A),(B),(C), and (D) provide as follows:

(a)(1) *In all actions for divorce* or separate support and maintenance, *the court* having jurisdiction thereof *may*, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, *equitably divide*, distribute or assign *the marital property between the parties* without regard to marital fault in proportions *as the court deems just*.

(2) *To this end, the court shall be empowered to effectuate its decree by divesting and reinvesting title to such property* and, where deemed necessary, to order a sale of such property and to order the proceeds divided between the parties.

\*　　\*　　\*　　\*　　\*　　\*

(b) For purposes of this chapter:

(1)(A) *"Marital property" means all* real and *personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage* up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation and the value of vested pension, retirement or other fringe benefit rights accrued during the period of the marriage.

(C) As used in this subsection, *"substantial contribution" may include*, but not

be limited to, *the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine.*

(D) Property shall be considered marital property as defined by this subsection for the sole purpose of dividing assets upon divorce and for no other purpose; (emphasis added).

Tenn.Code Ann. § 36–4–121(a)(1) and (2), (b)(1)(A),(B),(C), and (D) (1996).

Like *Bass v. Hall,* the non-debtor spouse here, Mrs. Aldrich, did not generate taxable income. Mrs. Aldrich, like the non-debtor spouse in *Bass v. Hall,* substantially contributed to the marital enterprise or domestic partnership in her vital role as a homemaker. As a homemaker, she unquestionably performed valuable but economically uncompensated services for the family. Her substantial contributions helped give rise to the tax refund check. Accordingly, it seems only reasonable, fair, and equitable (*i.e.,* just) for this court to consider both monetary and non-monetary contributions to the acquisition of marital properties by the members of a family or martial partnership when considering the economic value or portion of a spouse's equitable share. *See Bass v. Hall,* 79 B.R. at 656–57.

■ This court agrees with District Judge Kiser that it would be "incongruous" to consider only the marital spouses' financial contributions to the taxable income which generated the tax refund and completely ignore the substantial contributions of a non-income producing homemaker, who performs valuable but economically uncompensated services for the family. *Bass,* 79 B.R. at 657. Moreover, it could be said that to hold otherwise would be demeaning and insulting to deserving

homemakers, even though the non-filing spouse-homemaker had no taxable income during the taxable year in question.

Finally, this court is further persuaded by the fact that it seems inconsistent and fundamentally unfair under these circumstances that a non-filing spouse is jointly responsible and liable for a joint federal income tax deficiency yet, *ipso facto,* prevented from reaping any portion of the deserved, good fortune of a tax refund. This court additionally agrees with Judge Kiser that one of the most important points in this whole issue is that the non-filing spouse's liability would be joint in the event taxes were left unpaid. Thus, the right to a tax refund here should be joint. *See Bass,* 79 B.R. at 657.

Assuming arguendo that the non-income producing homemaker was the person who filed the voluntary chapter 7 petition instead of the income producing spouse, this court has no doubt that the bankruptcy trustee in the debtor-homemaker's case would assert that the debtor-homemaker has a legal or equitable interest in the joint tax refund under the broad definition of the property of the estate under section 541 of the Code.

Furthermore, the Internal Revenue Code, specifically, 26 U.S.C. § 6013(d)(3), ordinarily mandates joint and several liability for tax deficiency for couples filing jointly who fail to pay their full income tax liability. 26 U.S.C. § 6013(d)(3); *Shea v. Commissioner of Internal Revenue,* 780 F.2d 561, 564 (6th Cir.1986). This court recognizes the fact that other bankruptcy courts have reached a different conclusion when addressing the rights of non-income producing spouses.[2] However, this court is persuaded by the cogent rationale of Judge Kiser in *Bass v. Hall, supra,* when he stated, inter alia, that "[t]he presumption of equal ownership applies to negotiable instruments, and should logically apply

---

2. *See In re Griffin,* 1 B.R. 653 (M.D.Tenn.1979)(denying any part of the proceeds to a "housewife" since she failed to be employed in a capacity where income taxes were withheld by her employer); *In re Boudreau,* 350 F.Supp. 644 (D.C.Conn.1972)(stat-

ing that a wife who did not work during the entire taxable year did not contribute to the family during that year, thus proceeds from the refund check were property payable to the bankruptcy trustee); *In re Colbert,* 5 B.R. 646 (Bankr.S.D.Ohio 1980)(stating the a non-in-

to joint tax refunds between spouses." *Bass* 79 B.R. at 656.

Therefore, this court holds that in an appropriate case a non-income producing non-filing spouse, who is a homemaker that makes substantial contributions to the family, may be entitled to have a property interest in a joint tax refund check, notwithstanding that all the taxable income was generated by the debtor-spouse. This analysis, however, should be made on a case-by-case basis. The totality of the particular facts and circumstances existing here create an equal ownership in the joint tax refund check. The relationship in this action is akin to a de facto tenants in common status or the functional equivalent thereof. Accordingly, one-half of the tax refund check is allocated to Mr. Aldrich's bankruptcy estate available for administration and distribution to creditors after his allowed exemptions under relevant state law, and one-half is allocated to Mrs. Aldrich, the non-filing spouse.

Based on the foregoing, **IT IS SO ORDERED AND NOTICE IS HEREBY GIVEN.**

come producing spouse has no property interest in the income tax refund of the income-producing spouse, even though a joint return was filed).